**Salem**
DAVID WAYNE NASH
v.
COMMONWEALTH OF VIRGINIA
No. 1859-89-3
Decided May 21, 1991

Counsel

Gregory P. Cochran (John R. Alford; Caskie & Frost, on briefs), for appellant.

Katherine B. Toone, Assistant Attorney General (Mary Sue Terry, Attorney General; H. Elizabeth Shaffer, Assistant Attorney General, on brief), for appellee.

Opinion

**KOONTZ, C.J.**—In a bench trial held on October 31, 1989, David Wayne Nash, appellant, was convicted of driving under the influence of alcohol pursuant to Code § 18.2-266 and sentenced to thirty days in jail, fined $300, and had his operator's license suspended for three years pursuant to Code § 18.2-270 for the second violation of the same offense within a five year period. On appeal, Nash contends (1) the trial court erred by admitting into evidence his statements made before he was given *Miranda* warnings, and (2) the evidence is insufficient to sustain his conviction. We disagree and affirm Nash's conviction.

On April 29, 1989, Virginia State Trooper Ken Keesee arrived at the scene of a motor vehicle accident in Amherst County, where he found a 1978 Plymouth sedan completely off the road and wedged underneath a telephone guide wire. He did not find anyone near the vehicle. However, Trooper Beck, whom Trooper Keesee had radioed for assistance, found Nash walking down another road about a quarter of a mile from the accident and returned Nash to the accident scene. Upon Nash's return to the scene, Trooper Keesee began questioning Nash. As requested, Nash produced his driver's license and vehicle registration, and then told Keesee that he was alone driving the car when the accident occurred around seven o'clock in the evening. Thereafter, Keesee continued his accident investigation with Nash in the

State Police patrol car, where Nash explained how the accident happened. As they discussed the accident, Keesee smelled alcohol on Nash and noticed Nash's eyes were somewhat bloodshot. Keesee then asked Nash if he had been drinking any alcohol. Nash told Keesee he consumed five or six beers, the last one about an hour before the accident. Keesee then subjected Nash to several field sobriety tests. After completing coordination tests and administering a field alcosensor test, Keesee placed Nash under arrest for driving under the influence and informed him of the Virginia implied consent law and of his *Miranda* rights. Nash informed Keesee he wished to take a breath test, which Keesee personally administered to Nash in Lynchburg about twenty to thirty minutes later. The results of that breath test indicated Nash's blood alcohol content was .15 percent by weight by volume.

While Nash acknowledges that, under *Berkemer v. McCarty*, 468 U.S. 420 (1984), individuals are not necessarily entitled to be informed of their *Miranda* rights during routine traffic stops, he also argues police are required to advise suspects of their *Miranda* rights when such a detention evolves into a custodial interrogation. Nash contends he was not subject to a routine traffic stop when he made his statements, but instead was in custody and subjected to a custodial interrogation. We disagree.

Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966) (footnote omitted); *accord Berkemer*, 468 U.S. at 428. However, persons temporarily detained pursuant to routine traffic stops are not "in custody" for *Miranda* purposes. In such cases, "the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions" that the detainee has committed a crime. *Berkemer*, 468 U.S. at 439. "[I]f a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by *Miranda*." *Id.* at 440.

In *Berkemer*, an officer observed McCarty's vehicle weaving along a highway, and forced McCarty to stop and get out of his vehicle. When McCarty complied, the officer noticed McCarty

was having difficulty standing and asked McCarty to perform a field sobriety test, which McCarty failed. The officer then asked McCarty if he had been using intoxicants and McCarty informed the officer that he had consumed two beers and had smoked some marijuana. The officer thereupon placed McCarty under arrest. 468 U.S. at 423. Based on these facts, the Court held McCarty was not taken into custody for *Miranda* purposes until the officer placed him under arrest, and, therefore, McCarty's pre-arrest statements were admissible against him. *Id.* at 442.

In the present case, the facts are essentially identical to the facts in *Berkemer*, except that the officers found Nash a quarter of a mile from his vehicle and returned him to the accident scene. The record does not suggest Nash was forced or unwilling to return to the accident scene with Trooper Beck. Therefore, Trooper Beck's action in returning Nash to the scene did not place Nash "in custody" or deprive Nash of his freedom in any significant way so as to transform the remainder of the investigation into a custodial interrogation that required *Miranda* warnings.

Regarding the remainder of the investigation, Trooper Keesee had reasonable suspicion that Nash committed a traffic violation since Nash's vehicle had run off the road. Thus, he was entitled to ask Nash a moderate number of questions to determine Nash's identity and to confirm or dispel his suspicions regarding the accident. As in *Berkemer*, Nash was simply asked for identification, whether he had consumed any alcohol, and to perform a field sobriety test, at the conclusion of which he was placed under arrest. Based on these facts and the *Berkemer* holding, we hold Nash's statements were properly admitted into evidence.

Nash also challenges the sufficiency of the evidence to sustain his conviction. "On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it." *Martin v. Commonwealth*, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). Ample evidence supports Nash's conviction. Nash smelled of beer, had bloodshot eyes, and admitted drinking five or six beers an hour before the accident. His performance during the field sobriety tests also suggested that he was

under the influence of alcohol. Finally, Nash's breath test disclosed a blood alcohol level of .15 percent by weight by volume. Combined with Nash's driving record, which indicates he was convicted of driving while intoxicated during the previous five year period, the evidence is sufficient to sustain Nash's conviction for driving under the influence of alcohol for the second time within a five year period.

For the foregoing reasons, we affirm the trial court's decision.

*Affirmed.*

Barrow, J., and Moon, J., concurred.