COURT OF APPEALS OF VIRGINIA

Present:   Judges Frank, Clements and Senior Judge Willis
Argued at Alexandria, Virginia


LINDSAY ELIZABETH WADE

                                             MEMORANDUM OPINION[*] BY
v.        Record No. 1878-03-4              JUDGE JEAN HARRISON CLEMENTS
                                                  DECEMBER 14, 2004
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
J. Howe Brown, Jr., Judge Designate

Michael D. Sawyer (Alexander N. Levay; Moyes & Levay, P.L.L.C.,
on briefs), for appellant.

Stephen R. McCullough, Assistant Attorney General (Jerry W.
Kilgore, Attorney General, on brief), for appellee.


        Lindsay Elizabeth Wade was convicted in a bench trial of driving under the influence of

alcohol (DUI), in violation of Code § 18.2-266.  On appeal, Wade contends the trial court erred (1)

in admitting an unauthenticated photocopy of the certificate of blood alcohol analysis into evidence

and (2) in denying her motion to suppress her pre-arrest statements to police.  For the reasons that

follow, we affirm Wade's conviction.

        As the parties are fully conversant with the record in this case, and because this

memorandum opinion carries no precedential value, this opinion recites only those facts and

incidents of the proceedings as are necessary to the parties' understanding of the disposition of this

appeal.

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND

"In accordance with familiar principles of appellate review, we 'state the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party below.'" Pearson v. Commonwealth, 43 Va. App. 317, 319, 597 S.E.2d 269, 270 (2004) (quoting Johnson v. Commonwealth, 259 Va. 654, 662, 529 S.E.2d 769, 773 (2000)). As relevant to this appeal, the evidence proved that, on September 27, 2002, at approximately 11:30 p.m., Investigator Michael Powell of the Loudoun County Sheriff's Department observed Wade exit from an apartment in the area of the Leesburg Restaurant on King Street in the Town of Leesburg. Wade walked to a car parked on King Street. As Wade attempted to get into the car, she "kind of fell down in the street half way standing up holding onto the door." Powell, who was working undercover in an unrelated drug investigation, radioed his supervisor and informed him that he had just observed someone he believed was "attempting to drive drunk."

After getting in the car, Wade drove south on King Street. Powell followed her in the unmarked "standard civilian" truck he was using. At the next intersection, Wade stopped at a traffic light. When the light turned green, Wade "sat there for quite a while" before turning right onto Loudoun Street. Powell observed that Wade was driving "very erratically," crossing the center lane of traffic and "weaving back and forth." Powell notified the Leesburg police that he needed a "Leesburg Unit" to respond. Wade, who had been heading away from the downtown area, then turned right onto Ayr Street. Reaching the intersection of Ayr and Market Streets, Wade ran a stop sign and headed east on Market Street back toward the downtown area. In front of the entrance to the old hospital, Wade's vehicle drifted to the right, nearly missing a truck parked at the curb, and then veered left into the other lane of traffic. Several blocks farther down on Market Street, Wade's vehicle sideswiped a van that was parked in front of the Tally-Ho movie theater and then struck a

woman who had stepped out from in front of the van, knocking her into the air and onto the sidewalk.

While Powell radioed in a possible hit and run, asked for a rescue vehicle, and got out to assist the fallen woman, he observed Wade's vehicle accelerate from the scene, travel past a parking garage and some vacant parking spaces in front of a hobby shop on the same side of the street, and abruptly turn "the opposite way up a one-way alley." Powell followed in his vehicle. He saw Wade pull her vehicle into one of the parking spaces behind the stores fronting on south King Street and then back out. Powell pulled in behind Wade's vehicle and they were "pretty much nose to nose." Wade yelled, "I've got to get out of here. I've got to get out of here. Get out of my way." Wade then backed up her vehicle, made a U-turn, and appeared to Powell to be attempting to leave going the wrong way. Powell then pulled his truck up to her vehicle in such a way as to block the front of her vehicle. Powell then identified himself as a police officer, using his issued badge, and told Wade to "turn off" the car. Wade responded, "You don't know what kind of day I've had. I hit a deer and I just hit somebody."

Officer John Campbell of the Leesburg Town Police, who had been in communication with Powell regarding the possible DUI and hit and run, responded to the alley. Upon approaching Wade's vehicle, he observed Wade in the driver's seat "crying hysterically." The officer asked Wade how she was doing, and Wade continued to "cry frantically." Campbell then asked Wade for her driver's license. After looking in her purse, Wade informed the officer that she was unable to find her license. While speaking with Wade, Campbell noticed "an odor of alcoholic beverage emitting from the vehicle" and asked Wade to step out of the car. Once Wade was out of the vehicle, Campbell "continued to detect the same odor." Campbell then "began conducting a DUI investigation."

Campbell asked Wade how much she had had to drink, and she responded that she had had two beers. Asked when she had consumed those beers, Wade stated her "last drink had been a couple of hours earlier." In response to the officer's questions, Wade also stated that her highest level of education was a "little over a year" in college, she was not taking medication or supposed to be taking medication, and she had no physical impairments or disabilities that would impair her performing field sobriety tests. Thereafter, Wade failed to satisfactorily perform two of the four field sobriety tests administered by Campbell, and Campbell arrested her for DUI.

Investigator Powell remained at the scene while Officer Campbell questioned Wade but did not participate in the questioning. Campbell did not administer Miranda warnings to Wade during the pre-arrest questioning. Campbell testified that Wade was not free to leave while he was questioning her.

After being informed of the Virginia implied consent law, Wade submitted to a breath test administered by Officer Richard B. Thomas. At trial, the Commonwealth offered for admission into evidence a photocopy of the certificate of blood alcohol analysis. Wade objected to the admission of the photocopy on the grounds of "insufficient foundation" and the "best evidence rule," arguing that the officer "did not know who conducted the test" and was unable to "testify what did or did not take place." In response, the Commonwealth called Officer Campbell, who testified that he was present when Officer Thomas administered the breath test; that, as a result of the breath test, a certificate of blood alcohol analysis was generated by the Intoxilyzer machine; that he observed the certificate generated by the machine; that he observed Thomas sign the original certificate; and that the photocopy being offered by the Commonwealth was a "fair and accurate photocopy" of the original certificate "generated by the Intoxilyzer" machine. The Commonwealth again offered the certificate into evidence, arguing that a true and accurate photocopy "in this day and age" satisfies the best evidence rule.

Wade again objected to the certificate's admissibility, arguing that the best evidence rule and "the authenticity of the document" required the Commonwealth to produce the original or account for its absence. Wade also argued that the photocopy was inadmissible hearsay because the Commonwealth did not satisfy the foundation requirements of Code § 18.2-268.9. The trial court overruled Wade's objection and admitted the certificate into evidence.

The certificate of blood alcohol analysis revealed that Wade had a blood alcohol content of .13 grams per 210 liters of breath. At the conclusion of the trial, the trial court found Wade guilty of DUI, in violation of Code § 18.2-266.[1] This appeal followed.

## II. ANALYSIS

### A. Admissibility of the Certificate of Blood Alcohol Analysis

On appeal, Wade's sole claim of error regarding the certificate of blood alcohol analysis is that the admission into evidence of the photocopy of the certificate was error because "the Commonwealth did not provide the required attestation to the authenticity of the photocopy as required by Code § 8.01-391(B)." Citing Williams v. Commonwealth, 35 Va. App. 545, 546 S.E.2d 735 (2001), Wade argues that, pursuant to Code § 8.01-391(B), the photocopy of the certificate was admissible, in lieu of the original, only if authenticated as a true copy by the custodian of the record or the person to whom the custodian reports. The Commonwealth's failure to present such evidence of authentication, she argues, renders the photocopy of the certificate inadmissible.

---

[1] Wade was initially charged with felony hit and run, in violation of Code § 46.2-894, driving after forfeiture of license, in violation of Code § 18.2-272, and DUI, second or subsequent offense within five years, in violation of Code § 18.2-266. At the conclusion of the Commonwealth's case-in-chief, the trial court struck the charge of driving after forfeiture of license and reduced the charge of DUI, second or subsequent offense within five years, to a charge of DUI, first offense. At the conclusion of the trial, the trial court dismissed the charge of felony hit and run.

The Commonwealth argues that Wade's claim is procedurally barred under Rule 5A:18 because the argument she makes on appeal was never raised at trial. We agree with the Commonwealth.

Rule 5A:18 provides in pertinent part:

> No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated *together with the grounds therefor* at the time of the ruling . . . . A mere statement that the judgment or award is contrary to the law and the evidence is not sufficient to constitute a question to be ruled upon on appeal.

(Emphasis added.)

Pursuant to Rule 5A:18, we "will not consider an argument on appeal [that] was not presented to the trial court." Ohree v. Commonwealth, 25 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998).

> Under this rule, a specific argument must be made to the trial court at the appropriate time, or the allegation of error will not be considered on appeal. A general argument or an abstract reference to the law is not sufficient to preserve an issue. Making one specific argument on an issue does not preserve a separate legal point on the same issue for review.

Edwards v. Commonwealth, 41 Va. App. 752, 760, 589 S.E.2d 444, 448 (2003) (en banc), aff'd, No. 040019 (Va. Sup. Ct. Order of 10/15/04). Thus, "though taking the same general position as in the trial court, an appellant may not rely on reasons which could have been but were not raised for the benefit of the lower court." West Alexandria Properties, Inc. v. First Va. Mortgage & Real Estate Inv. Trust, 221 Va. 134, 138, 267 S.E.2d 149, 151 (1980). In short, we will not consider an argument on appeal that is different from the specific argument presented to the trial court, even if it relates to the same issue. See Buck v. Commonwealth, 247 Va. 449, 452-53, 443 S.E.2d 414, 416 (1994) (holding that appellant's failure to raise the same specific arguments "before the trial court precludes him from raising them for the first time on appeal"). The main purpose of this rule is to ensure that the trial court and opposing party are given the opportunity to intelligently address,

- 6 -

examine, and resolve issues in the trial court, thus avoiding unnecessary appeals and reversals. Lee v. Lee, 12 Va. App. 512, 514, 404 S.E.2d 736, 739 (1991) (en banc); Kaufman v. Kaufman, 12 Va. App. 1200, 1204, 409 S.E.2d 1, 3-4 (1991).

In this case, Wade raised several arguments at trial relative to her claim that the copy of the certificate was inadmissible. Initially, she stated that her objection to the photocopy was based on its "insufficient foundation" and the "best evidence rule." She argued that Officer Campbell "did not know who conducted the test" and could not "testify what did or did not take place." After the Commonwealth presented additional evidence establishing that the offered photocopy was a "true and accurate" copy of the original certificate, Wade raised the "[s]ame objection," arguing that the "whereabouts" of the original document had "not been ascertained." The best evidence rule and "the authenticity of the document," she added, required the Commonwealth "to produce the original document" or "to account for why it [did not] have the original document." She later objected to the admissibility of the photocopy of the certificate on the grounds that it was inadmissible hearsay because the foundation requirements of Code § 18.2-268.9 were not met.

At no point, however, did Wade make before the trial court the argument she makes on appeal. Indeed, Wade never mentioned Code § 8.01-391(B) or any of its requirements at trial or argued that Officer Campbell was not the custodian of the record or the person to whom the custodian reports. Thus, the trial court was never advised of the claim Wade now makes on appeal and had no opportunity to consider, address, or resolve that issue. Moreover, our review of the record reveals no reason to invoke the "ends of justice" or "good cause" exceptions to Rule 5A:18. See Edwards, 41 Va. App. at 761, 589 S.E.2d at 448 ("We will not consider, *sua sponte*, a 'miscarriage of justice' argument under Rule 5A:18."); M. Morgan Cherry & Assocs. v. Cherry, 38 Va. App. 693, 702, 568 S.E.2d 391, 396 (2002) (en banc) (holding that the "good cause" exception to Rule 5A:18 will not be invoked where appellant had the opportunity to raise the

issue at trial but did not do so). We hold, therefore, that Wade is barred by Rule 5A:18 from raising this claim for the first time on appeal.[2]

## B. Motion to Suppress

The Commonwealth concedes that Wade was not administered <u>Miranda</u> warnings prior to her arrest for DUI. Wade claims that, because she was in custody when she made her pre-arrest statements to Officer Campbell and because she was not administered <u>Miranda</u> warnings before she made those statements, the trial court erred in denying her motion to suppress her statements. We disagree with Wade's premise that she was "in custody" when she made the subject statements.

"In reviewing a trial court's denial of a motion to suppress, 'the burden is upon [the appellant] to show that the ruling . . . constituted reversible error.'" <u>McGee v. Commonwealth</u>, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (en banc) (quoting <u>Fore v. Commonwealth</u>, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)). While "we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them," <u>id.</u> at 198, 487 S.E.2d at 261, "we review *de novo* the trial court's application of defined legal standards to the particular facts of a case," <u>Quinn v. Commonwealth</u>, 25 Va. App. 702, 712, 492 S.E.2d 470, 475-76 (1997).

Relying on Officer Campbell's testimony that she was not free to leave while he was questioning her, Wade asserts "the Commonwealth conceded in the trial court that [Wade] was in custody at the time of the [pre-arrest] statement." Wade's assertion is legally unsound. It is well established that "'[t]he initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned.'" <u>Garrison v. Commonwealth</u>, 36 Va. App. 298, 310, 549 S.E.2d 634,

---

[2] Wade also contends on appeal that, without the certificate of analysis, the Commonwealth's evidence was insufficient as a matter of law to prove she drove while under the influence of alcohol. Because our holding that appellate review of the certificate of analysis is procedurally barred renders this additional claim moot, we will not address it.

- 8 -

640 (2001) (quoting Stansbury v. California, 511 U.S. 318, 323 (1994)).  Thus, Campbell's testimony that Wade "was not free to leave" during his pre-arrest questioning of her does not, by itself, constitute a legally binding concession by the Commonwealth that Wade was in custody for Miranda purposes.

"Although an accused in custody must be advised of certain constitutional rights prior to being questioned, Miranda v. Arizona, 384 U.S. 436, 444-45 (1966), a Terry stop of a person to investigate a suspicion is not necessarily subject to the requirements of Miranda."  Bosworth v. Commonwealth, 7 Va. App. 567, 572, 375 S.E.2d 756, 759 (1989) (citing Berkemer v. McCarty, 468 U.S. 420, 440 (1984)).  "We have previously equated routine traffic stops with 'Terry' stops." Clarke v. Commonwealth 32 Va. App. 286, 299, 527 S.E.2d 484, 490 (2000).  Hence,

> persons temporarily detained pursuant to routine traffic stops are not "in custody" for Miranda purposes.  In such cases, "the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions" that the detainee has committed a crime.

Nash v. Commonwealth, 12 Va. App. 550, 552, 404 S.E.2d 743, 744 (1991) (quoting Berkemer, 468 U.S. at 439).  Only if the detained motorist is thereafter "subjected to treatment that places him 'in custody'" is he or she entitled "to the protections prescribed by Miranda."  Bosworth, 7 Va. App. at 572, 375 S.E.2d at 759 (citing Berkemer, 468 U.S. at 440).

Here, Officer Campbell had a reasonable articulable suspicion, based upon Investigator Powell's observations and reports, that Wade was operating her motor vehicle while intoxicated. Having detained her based on that suspicion, Officer Campbell asked Wade for her driver's license to determine her identity.  After observing the odor of alcohol emanating from the vehicle and from Wade's person when she exited the vehicle, Campbell asked a moderate number of routine questions and asked Wade to perform field sobriety tests to determine whether she was intoxicated. The officer never physically restrained Wade or told her she was not free to go.  Nor did he draw his

weapon or tell her she was under arrest. Only after confirming his suspicion that she was intoxicated did Campbell arrest Wade, and thereby implicate <u>Miranda</u>. Thus, we hold that Wade was not in custody for purposes of <u>Miranda</u> when she made her pre-arrest statements and the trial court did not err in denying the motion to suppress.

## C. Conclusion

For these reasons, we affirm Wade's conviction.

<u>Affirmed.</u>