COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Huff and Athey
Argued at Norfolk, Virginia

JERODE DEMETRIUS JOHNSON

                                                   MEMORANDUM OPINION* BY
v.        Record No. 1591-18-1                     JUDGE CLIFFORD L. ATHEY, JR.
                                                   FEBRUARY 18, 2020

COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                           H. Thomas Padrick, Jr., Judge

                Roger A. Whitus, Assistant Public Defender, for appellant.

                Leah A. Darron, Senior Assistant Attorney General (Mark R.
                Herring, Attorney General, on brief), for appellee.


        Jerode Demetrius Johnson was charged with aggravated vehicular manslaughter in

violation of Code § 18.2-36.1(B), in addition to other charges stemming from a car accident.

Before trial, Johnson filed a motion to suppress his statements to police at the scene of the

accident and later at the hospital and the results of an alleged warrantless seizure of a sample of

his blood pursuant to the implied consent statute.  The trial court denied Johnson's motion to

suppress.  With the consent of the Commonwealth and the approval of the circuit court, Johnson

conditionally pled guilty to all charges, while reserving his right to appeal the trial court's denial

of his motion to suppress.  Finding no error, we affirm Johnson's convictions.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. FACTUAL BACKGROUND[1]

On May 19, 2017, Officer W.J. Quina of the Virginia Beach Police Department was dispatched to the scene of a fatal car accident. A box-style furniture truck had crossed the center double yellow line and struck an SUV head-on. The driver of the SUV succumbed to her injuries at the scene, while the passenger suffered severe and permanent injuries.

Upon arriving at the scene, Officer Quina saw Johnson come around the side of the box truck and noticed swelling on Johnson's forehead. Johnson ran away from the scene via a driveway on the right side of a nearby home. Officer Quina and two fellow officers followed Johnson up the driveway. When the officers reached the backyard of the home, Officer Quina found Johnson standing in the backyard looking across a ditch at an open field.

During the brief conversation with Johnson in the backyard, none of the officers had their service weapon drawn, shouted orders to Johnson, told Johnson that he was under arrest, ordered Johnson to the ground, or placed Johnson in handcuffs.

With one officer guiding Johnson by his right arm due to his staggering gait, the officers returned Johnson to the scene of the accident. While Johnson was receiving medical treatment, Officer Quina detected the odor of alcohol and noticed that Johnson's eyes were bloodshot and watery and that he was swaying and slurring his speech. At this point, Officer Quina initiated a DUI investigation of the crash.

Officer Quina asked Johnson biographical questions and also questions about the accident, to which Johnson confirmed that he was the driver of the box truck. Officer Quina asked Johnson if he had consumed any alcohol. Johnson stated that he had not consumed any

---

[1] Under familiar appellate principles, the evidence is summarized in the light most favorable to the Commonwealth, the prevailing party at trial. Gerald v. Commonwealth, 295 Va. 469, 472 (2018).

alcohol after the crash, but that he had four to five alcoholic beverages at around 2:00 a.m. and another two alcoholic beverages around 11:00 a.m., three and a half hours before the accident.

Upon this admission, Officer Quina administered a series of four standardized field sobriety tests. One of the tests administered by Officer Quina was the horizontal gaze nystagmus, to which Johnson exhibited six out of six signs of alcohol impairment. The results of the field sobriety tests supported Officer Quina's suspicion that Johnson may have been alcohol impaired. Officer Quina arrested Johnson and advised him of his rights under Miranda. Johnson answered in the affirmative that he understood his rights and was subsequently transferred to the hospital for medical evaluation.

Officer T.J. Aicher of the Fatal Crash Team met Johnson at the hospital to continue the investigation. Officer Aicher recorded the interview with Johnson, and a transcript of the interview was admitted as a defense exhibit at the suppression hearing.

Officer Aicher began the interview at the hospital by advising Johnson of his rights under Miranda for a second time. Johnson responded "uh-huh" and nodded when asked if he understood his rights. Officer Aicher then asked Johnson to respond directly with a "yes" or "no," to which Johnson continued to say "uh-huh." Officer Aicher again asked for clarification. Johnson responded, "I said, yes."

After confirming that Johnson understood his rights, Officer Aicher began by asking Johnson for biographical information. Johnson answered the biographical questions without hesitation. Officer Aicher then administered a second horizontal gaze nystagmus test that again exhibited six out of six signs of alcohol impairment. Additionally, Officer Aicher administered a medical clearance eye test using a pupillometer to which Johnson exhibited no indicators of medical impairment.

At this point, Officer Aicher described Virginia's implied consent law to Johnson. Johnson stated that he did not understand the law, which prompted Officer Aicher to provide a detailed explanation of the law in simpler terms. Johnson asked Officer Aicher if he could "say no" to having additional blood drawn.[2] Officer Aicher responded that Johnson could decline the blood test, but that if he refused, he would get a "second charge" in addition to the DUI charge for which he was already under arrest. Johnson stated that he had "no choice," he did not want another charge, and agreed to the blood test. The blood sample taken pursuant to the implied consent law indicated a BAC of .09.

Johnson relied on two theories in his motion to suppress. First, Johnson argued that all his statements to law enforcement should be suppressed for violations of his Fifth Amendment rights pursuant to Miranda. Johnson contends that he was in custody at the point he was detained in the backyard of the home and that he was thereafter interrogated by police without being advised of his Miranda warnings. Second, Johnson contends that the blood draw taken pursuant to the implied consent statute should also be suppressed because he was faced with an unconstitutional condition and the draw was taken in violation of his constitutional rights pursuant to Birchfield v. North Dakota, 136 S. Ct. 2160 (2016). The trial court denied Johnson's motion to suppress, specifically finding that Johnson was not presented with an unconstitutional condition. Johnson appeals from that ruling.

## II. ANALYSIS

"When reviewing a circuit court's denial of a motion to suppress, '[t]he burden is on the defendant to show that the trial court committed reversible error.'" Brown v. Commonwealth, 68 Va. App. 58, 67 (2019) (quoting McGhee v. Commonwealth, 280 Va. 620, 632 (2010)). "We are bound by the trial court's factual findings unless those findings are plainly wrong or

_____

[2] Johnson had provided a blood sample previously for medical treatment.

unsupported by the evidence.  We will review the trial court's application of the law *de novo*."

Id. (quoting McGhee, 280 Va. at 632).  "In an appeal of the denial of a motion to suppress

evidence, we review the facts in the light most favorable to the prevailing party, the

Commonwealth."  Hill v. Commonwealth, 68 Va. App. 610, 614 (2018), aff'd, 297 Va. 804

(2019).  "In ruling on the propriety of a trial court's decision on a motion to suppress, the

appellate court considers the evidence introduced at the suppression hearing and at trial."

Hairston v. Commonwealth, 67 Va. App. 552, 557 n.1 (2017).

## A.  Pre-Miranda Statements

Johnson contends that he was in custody, for the purposes of Miranda, when he was

detained by the police officers in the backyard of the home near the scene of the accident.

Johnson alleges that any statements made to Officer Quina before being advised of his Miranda

rights, and placed into custody, are in violation of his Fifth Amendment protections.  We

disagree.

The United States Supreme Court in Berkemer v. McCarty, 468 U.S. 420, 442 (1984),

held that individuals are not necessarily entitled to be informed of their Miranda rights during

routine traffic stops.  Applying Berkemer, we stated in Nash v. Commonwealth, 12 Va. App.

550, 552 (1991), that a suspect is only entitled to the protections of Miranda when the routine

traffic stop becomes a custodial interrogation.

"Custodial interrogation means 'questioning initiated by law enforcement officers after a

person has been taken into custody or otherwise deprived of his freedom of action in any

significant way.'"  Id. (quoting Miranda v. Arizona, 384 U.S. 436, 444 (1966) (footnote

omitted)).  However, when the investigation is limited to "a moderate number of questions to

determine [a person's] identity and to try to obtain information confirming or dispelling the

officer's suspicions," the person suffering the temporary detention is not said to be "in custody" for the purposes of <u>Miranda</u>.  <u>Berkemer</u>, 468 U.S. at 439.

In <u>Berkemer</u>, an officer observed a vehicle weaving along a highway and initiated a traffic stop of the driver.  <u>Id.</u> at 423.  Upon approaching the driver, the officer noticed that the driver was having difficulty standing and asked the driver to perform a field sobriety test.  <u>Id.</u> The officer asked the driver if he was intoxicated, and the driver informed the officer that he had consumed two beers and smoked marijuana.  <u>Id.</u>  At this point, the officer placed the driver under arrest.  <u>Id.</u>  The Court held that the driver was not "in custody" for purposes of <u>Miranda</u> until the officer placed him under arrest; thus, the pre-arrest statements were admissible.  <u>Id.</u> at 442.

This Court reiterated the <u>Berkemer</u> ruling in <u>Nash</u>.  There, a state trooper responded to the scene of a motor vehicle accident.  <u>Nash</u>, 12 Va. App. at 551.  The trooper found Nash a quarter of a mile from the scene of the accident and returned him to the location of the vehicle. <u>Id.</u>  Once arriving back at the scene of the accident, the trooper began questioning Nash about his identity and the circumstances surrounding the accident.  <u>Id.</u>  As Nash and the trooper were discussing the accident, the trooper noticed a smell of alcohol on Nash's breath and bloodshot eyes.  <u>Id.</u> at 552.  The trooper proceeded to ask Nash if he had consumed any alcohol.  <u>Id.</u>  After Nash responded in the affirmative, the trooper conducted several field sobriety tests.  <u>Id.</u>  After Nash unsuccessfully completed the tests, the trooper placed Nash under arrest, informed him of the Virginia implied consent law, and read him his <u>Miranda</u> rights.  <u>Id.</u>

Nash argued that the actions of the trooper in bringing him back to the scene of the accident as well as the subsequent questioning by the trooper turned a routine traffic stop into a custodial interrogation.  <u>Id.</u>  This Court held that because Nash "was not forced or unwilling to return to the accident scene, he was not 'in custody' or deprived of his freedom in any significant

- 6 -

way so as to transform the remainder of the investigation into a custodial interrogation that required <u>Miranda</u> warnings." <u>Id.</u> at 553.

The holding in <u>Nash</u> is instructive in this case. Johnson ran away from the scene of a horrific crash. Officer Quina followed Johnson around a nearby house and then assisted Johnson, whose gait was unsteady, back to the scene of the accident. Officer Quina noticed several indicators of intoxication while speaking with Johnson. After obtaining Johnson's biographical information, Officer Quina administered several field sobriety tests, each of which showed alcohol impairment. At this point, Officer Quina placed Johnson under arrest and immediately advised him of his <u>Miranda</u> rights. Johnson voluntarily stated that he understood his rights and was willing to speak with the police.

Thus, due to our holding in <u>Nash</u>, and the United States Supreme Court's holding in <u>Berkemer</u>, the trial court, in this case, did not err in denying Johnson's motion to suppress his statements made to the police during the pre-<u>Miranda</u> DUI investigation.

### B. <u>Post-Miranda Statements</u>

Johnson contends that, due to a variety of conditions, he was unable to understand the implications of waiving his <u>Miranda</u> rights. Johnson argues that the injuries suffered in the accident, his difficulty in remaining awake, and his voluntary intoxication rendered him unable to voluntarily and intelligently waive his rights under <u>Miranda</u>. We disagree.

"Statements made during a custodial interrogation and while intoxicated are not *per se* involuntary or inadmissible." <u>Sellers v. Commonwealth</u>, 41 Va. App. 268, 274 (2003) (quoting <u>Boggs v. Commonwealth</u>, 229 Va. 501, 512 (1985)). The test is, whether, by reason of the intoxication or injury, the appellant's "will was overborne" or whether the statements were the "product of a rational intellect and a free will." <u>Townsend v. Sain</u>, 372 U.S. 293, 307 (1963).

"In determining whether the defendant's will has been overborne, courts look to the totality of all the surrounding circumstances." Gray v. Commonwealth, 233 Va. 313, 324 (1987).

In Rodriguez v. Commonwealth, 40 Va. App. 144, 163 (2003), this Court held that:

> [A] deficient mental condition (whether the result of a pre-existing mental illness or, for example, pain killing narcotics administered after emergency treatment) is not, without more, enough to render a waiver [or confession] involuntary. . . . The evidence [must] show that law enforcement officials exploited [the accused's] weakened condition with coercive tactics, although the degree of coercion required is lower where the suspect's level of susceptibility is higher. Under this standard, we hold the evidence, viewed in the light most favorable to the Commonwealth, supports the trial court's conclusion that appellant's waiver of rights and confession were voluntary.

"[E]vidence of coercive police activity 'is a necessary predicate to the finding that a confession is not voluntary.'" Commonwealth v. Peterson, 15 Va. App. 486, 488 (1992) (quoting Colorado v. Connelly, 479 U.S. 157, 164 (1986)). "The amount of coercion necessary to trigger the due process clause may be lower if the defendant's ability to withstand the coercion is reduced by intoxication, drugs, or pain, but some level of coercive police activity must occur before a statement or confession can be said to be involuntary." Id.

While Johnson's brief is devoid of any legal authority supporting his conclusions of law, the record further lacks any evidence that shows coercive police misconduct at the hospital. Officer Aicher carefully informed Johnson of his rights and asked Johnson for clarification multiple times in order to make sure Johnson understood and that he was answering in the affirmative. While Johnson may have been under the influence of alcohol and drugs, Johnson's memory regarding the details of the accident was not impaired.[3] Johnson provided a coherent attempt at explaining the accident by blaming it on defective equipment, namely bald tires.

---

[3] The Commonwealth obtained a warrant for blood taken for purposes of medical treatment that revealed the presence of THC, cocaine metabolites, valium metabolites, and ethanol serum level that equated to a BAC of .10 or .11.

Additionally, when presented with biographical questions, Johnson answered without hesitation. Johnson points to no examples of coercive police activity for the assertion that his waiver was involuntary, but rather relies on his intoxication to show that his will was overborne. Under the totality of the circumstances, Johnson's statements were not coerced, his will not overborne, and the waiver of his rights under Miranda was voluntary.

Accordingly, we find no error in the denial of the motion to suppress Johnson's post-Miranda statements to the police.

## C. Implied Consent Law

Johnson challenges the admission into evidence of the blood drawn at the hospital after he was informed of Virginia's implied consent law. Specifically, Johnson contends that Officer Aicher's use of the word "charge" when describing what would happen if Johnson refused the blood test created an unconstitutional condition upon him that rendered his consent to the blood draw unconstitutional under the Fourth Amendment. We disagree.

The unconstitutional conditions doctrine states that:

> a State can not grant a privilege subject to the agreement that the grantee will surrender a constitutional right, even in those cases where the state has the unqualified power to withhold the grant altogether. Where such a condition is imposed upon the grantee, he may ignore or enjoin the enforcement of the condition without thereby losing the grant.

Shin v. Commonwealth, 294 Va. 517, 522 (2017) (quoting City of Alexandria v. Texas Co., 172 Va. 209, 217 (1939)). "The rationale behind the doctrine is that if a state forces a constitutional right to be surrendered, it may compel a surrender of all rights." Id. at 523 (quoting Frost & Frost Trucking Co. v. Railroad Comm'n of Cal., 271 U.S. 583, 594 (1926)).

The relevant portion of the implied consent law states:

> Any person . . . who operates a motor vehicle upon a highway . . . in the Commonwealth shall be deemed thereby, *as a condition of such operation, to have consented to have samples of his blood,*

- 9 -

*breath, or both blood and breath* taken for a chemical test to determine the alcohol, drug, or both alcohol and drug content of his blood, if he is arrested . . . within three hours of the alleged offense.

Code § 18.2-268.2(A) (emphasis added).

Johnson, relying on Birchfield v. North Dakota, 136 S. Ct. 2160 (2016), contends that his consent to the blood draw was involuntary because Johnson was told he would receive an additional "charge" and thus an unconstitutional condition was placed on his consent. However, this is an incorrect reading of Birchfield. In Birchfield, the United States Supreme Court held that "motorists may not be *criminally* punished for refusing to submit to a blood test based on legally implied consent to submit to them." Id. at 2165 (emphasis added). The Court observed, however, that "prior opinions have referred approvingly to the general concept of implied-consent laws that impose *civil* penalties and evidentiary consequences on motorists who refuse to comply." Id. at 2185 (emphasis added).

The additional "charge" that Johnson would have received for the refusal of the test pursuant to the implied consent law is described in Code § 18.2-268.3(A)(1): "A first violation is a civil offense. For a first offense, the court shall suspend the defendant's privilege to drive for a period of one year." See Code § 18.2-268.3(A)(1). In deciding Shin, the Supreme Court consistently referred to the refusal of a blood or breath test under the implied consent statute as an "unreasonable refusal charge." Shin, 294 Va. at 522. Officer Aicher accurately described the likely consequence facing Johnson in the event that he refused the blood draw pursuant to the implied consent law.

Accordingly, we find that Officer Aicher's use of the word "charge" when describing the possible consequences Johnson would face if he refused the blood draw pursuant to the implied consent law did not place an unconstitutional condition upon Johnson. Johnson's unreasonable refusal, and any subsequent refusal charge and conviction, would have resulted in a civil penalty,

- 10 -

and the loss of Johnson's license for one year.  The holding in <u>Birchfield</u> should not be read to cast doubt on "laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply."  <u>Birchfield</u>, 136 S. Ct. at 2185.

### III. CONCLUSION

For the foregoing reasons, we affirm Johnson's convictions.

<u>Affirmed.</u>