COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Clements and Felton
Argued at Chesapeake, Virginia


DONALD E. PEARSON

                                                            OPINION BY
v.       Record No. 0225-03-1        JUDGE JEAN HARRISON CLEMENTS
                                                            JUNE 8, 2004
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF YORK COUNTY
N. Prentis Smiley, Jr., Judge

(Patrick D. Kelley, on brief), for appellant.  Appellant submitting on
brief.

Kathleen B. Martin, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


        Donald E. Pearson was convicted in a bench trial of driving under the influence of alcohol,

second offense, in violation of Code § 18.2-266.  On appeal, he contends the trial court erred in

admitting a certificate of blood analysis because, in having him take a blood test rather than a breath

test, the arresting officer failed to comply with Virginia's implied consent law.  Finding no error, we

affirm Pearson's conviction.

I.  BACKGROUND

        In accordance with familiar principles of appellate review, we "state the evidence presented

at trial in the light most favorable to the Commonwealth, the prevailing party below."  Johnson v.

Commonwealth, 259 Va. 654, 662, 529 S.E.2d 769, 773 (2000).  As relevant to this appeal, the

evidence proved that, on August 17, 2002, at approximately 8:07 p.m., Sergeant H.A. Nealy of the

Virginia State Police saw Pearson drive into a Mobile gas station in York County.  Nealy

approached Pearson and observed that Pearson's speech was slightly slurred and that there was a

strong odor of alcohol coming from Pearson's person after he exited his vehicle. Pearson's eyes appeared "glassy, watery and bloodshot," and his complexion was flushed. Pearson swayed slightly and was argumentative and "unfocused" as he talked to Nealy. Pearson admitted to the officer that he had consumed three beers over the past two hours at Pizzeria Uno. He also told Nealy he had eaten some chili earlier in the day at Chili's, which had given him indigestion. After Pearson failed several field sobriety tests, Nealy arrested him at 8:29 p.m. for driving under the influence of alcohol. Nealy advised Pearson of his rights under Virginia's implied consent law. Nealy then transported Pearson to the Virginia Peninsula Regional Jail, where he intended to administer a breath alcohol test to him.

In preparation for administering the breath alcohol test, Nealy, "a licensed breath alcohol operator" of the Intoxilyzer 5000 breath analysis machine, inspected Pearson's mouth and, finding no foreign objects, began the requisite twenty-minute observation period at 9:02 p.m. After twenty minutes passed, Nealy, following standard procedure, started the Intoxilyzer 5000 and, after determining the machine was working properly, entered the necessary identifying information obtained from Pearson. At 9:36 p.m., immediately before administering the breath test to Pearson, Nealy asked Pearson if he had burped or belched, and Pearson responded affirmatively. Nealy explained at trial that, although he had not seen or heard Pearson burp during the observation period, he was required, before obtaining a breath sample from him, to ask whether he had burped, because not all burps are susceptible to observation by the operator.

Nealy then began a new twenty-minute observation period. He told Pearson to tell him immediately if he burped again, explaining that burping "could affect his results and create an invalid sample." At 9:37 p.m., Pearson informed Nealy that he had burped again. Nealy began another twenty-minute observation period and once more told Pearson to let him know if he burped again. At 9:38 p.m., Pearson informed Nealy that he had burped again and told the officer that he

was "having a tough time" with the chili he had eaten earlier. At trial, Nealy explained that, although he did not observe Pearson burp or belch, he relied upon Pearson's voluntary admissions that he had done so. No evidence was presented to show that Nealy believed Pearson's actions were deliberate attempts to impede the administration of the test or that Pearson was otherwise uncooperative.

Seeking advisement as to Pearson's status under the implied consent law, Nealy took Pearson to see a magistrate. After a brief discussion with the magistrate, Nealy took Pearson to Williamsburg Community Hospital for a blood test. A registered nurse took samples of Pearson's blood at approximately 10:38 p.m. According to the Department of Criminal Justice Services, Division of Forensic Science certificate of analysis introduced by the Commonwealth at trial, an analysis of the blood drawn from Pearson revealed he had a blood alcohol content of 0.16%.

Pearson argued at trial that the results of the blood test were inadmissible because the Commonwealth failed to show he was physically unable to submit to a breath test and, thus, improperly denied him of his right to a breath test under Code § 18.2-268.2(B). The Commonwealth argued Pearson's digestive problems physically precluded him from taking the breath test.

Following argument, the trial court overruled Pearson's objection and admitted the certificate of blood analysis. In announcing its ruling, the court observed that the record was "replete with" evidence of Pearson's ongoing "trouble with [his] digestive system" that resulted from the chili he had eaten "much earlier" that day. Noting that Pearson "may never be through with belching or burping," the trial court found that, in taking Pearson to the magistrate and then for a blood test, Nealy "did all that was reasonably left to him to do." Accordingly, the court concluded that, because Pearson "was physically unable to submit to the breath test because he continued to burp," the blood test was properly given pursuant to Code § 18.2-268.2(B).

The trial court subsequently convicted Pearson of driving under the influence of alcohol, second offense, in violation of Code § 18.2-266. This appeal followed.

## II. ANALYSIS

On appeal, Pearson contends the trial court erred in admitting the results of the blood test into evidence because the Commonwealth failed to prove he was physically unable to take the breath test. Evidence that he "merely burped three times in the space of three minutes," Pearson maintains, is insufficient to prove his inability to take the breath test. Absent such proof, Pearson argues, Sergeant Nealy's decision to forgo administration of the breath test in favor of the blood test constituted a violation of Code § 18.2-268.2(B)'s requirement that a person arrested for driving while intoxicated be given a breath test unless he is physically unable to take such a test. Therefore, Pearson concludes, the certificate of analysis based on the blood test was inadmissible. We disagree.

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988). "By definition, when the trial court makes an error of law, an abuse of discretion occurs." Bass v. Commonwealth, 31 Va. App. 373, 382, 523 S.E.2d 534, 539 (2000). Application of the provisions of Code § 18.2-268.2(B) involves a mixed question of law and fact. See Bennett v. Commonwealth, 33 Va. App. 335, 342-43, 533 S.E.2d 22, 26 (2000) (*en banc*). Accordingly, in determining whether the trial court abused its discretion in this case, we will review the court's application of the law *de novo* while giving deference to its findings of fact. See Daily Press v. City of Newport News, 265 Va. 304, 309, 576 S.E.2d 430, 432-33 (2003) ("On appeal, we review a mixed question of law and fact *de novo* by giving deference to the trial court's factual findings in order to review the court's application of the law to those facts.").

Here, the trial court convicted Pearson of driving under the influence of alcohol, second offense, in violation of Code § 18.2-266. The trial court based its conviction, in part, on the results of the blood test it admitted into evidence, which showed that Pearson had a blood alcohol content of 0.16%. See Code § 18.2-269(A)(3) (providing that "a chemical analysis of a sample of the accused's blood" establishing the accused had a blood alcohol content of 0.08% or more gave rise to a presumption "that the accused was under the influence of alcohol intoxicants at the time of the alleged offense"). The blood test was administered to Pearson only after Sergeant Nealy, upon consulting with the magistrate, decided Pearson was physically unable to submit to a breath test because of his repeated burping.

Code § 18.2-268.2, Virginia's implied consent statute, provides, in relevant part, that any person who operates a motor vehicle on the highways of the Commonwealth shall be deemed "to have consented to have samples of his blood, breath, or both blood and breath taken for a chemical test to determine the alcohol . . . content of his blood, if he is arrested for violation of [Code] § 18.2-266 . . . within three hours of the alleged offense." Code § 18.2-268.2(A). Code § 18.2-268.2(B) provides, in pertinent part, that "[a]ny person so arrested . . . shall submit to a breath test. If the breath test is unavailable or the person is physically unable to submit to the breath test, a blood test shall be given." Hence, "[t]he arresting officer provides a blood test only when the [accused] is physically unable to perform a breath test" or no breath test is available. Oliver v. Commonwealth, 40 Va. App. 20, 23, 577 S.E.2d 514, 515-16 (2003).

In this case, neither party contends the breath test was unavailable. The dispositive issue before us, then, is whether Sergeant Nealy properly determined, that Pearson was physically unable to submit to the breath test because of his repeated burping. Applying the relevant provisions of Code § 18.2-268.2(B) outlined above to the evidence before us, we hold that he did.

Code § 18.2-268.11 provides that

> [t]he steps set forth in §§ 18.2-268.2 through 18.2-268.9 relating to taking, handling, identifying and disposing of blood or breath samples are procedural and not substantive. Substantial compliance shall be sufficient. Failure to comply with any steps or portions thereof . . . shall not of itself be grounds for finding the defendant not guilty, but shall go to the weight of the evidence and shall be considered with all the evidence in the case; however, the defendant shall have the right to introduce evidence on his own behalf to show noncompliance with the aforesaid procedures or any part thereof, and that as a result his rights were prejudiced.

The Commonwealth bears the burden of proving substantial compliance with the statutes' requirements. Snider v. Commonwealth, 26 Va. App. 729, 732, 496 S.E.2d 665, 666 (1998).

Code § 18.2-268.9 provides that, "[t]o be capable of being considered valid as evidence in a prosecution under § 18.2-266 . . . , chemical analysis of a person's breath shall be performed . . . in accordance with methods approved by the Department of Criminal Justice Services, Division of Forensic Science." As applicable to this case, the breath test methods approved by the Department of Criminal Justice Services, Division of Forensic Science are set forth in 6 VAC 20-190-110, which provides, in pertinent part, as follows:

> The division approves the following breath test methods and procedures:
>
> \* \* \* \* \* \* \*
>
> 2. The person to be tested shall be observed for at least 20 minutes prior to collection of the breath specimen, during which period the person must not have ingested fluids, *regurgitated*, vomited, eaten, or smoked. Should any of these actions occur, an additional 20-minute observation period must be performed.

(Emphasis added.) Plainly, the purpose of this regulation is to assure the testee has not engaged, either voluntarily or involuntarily, in activities before a breath test that could taint or otherwise affect the testee's breath sample. In other words, the regulation is intended to assure the accuracy of the test result, an objective as important to the accused as to the Commonwealth.

- 6 -

"Regurgitation" is defined as "an act of flowing, pouring, or gushing back or out again; *specif* : reversal of the natural direction in which the current or contents flow through a tube or cavity of the body." Webster's Third New International Dictionary 1914 (1993). The terms "belch" and "burp," which are synonymous, mean "to expel gas suddenly through the mouth." Id. at 199, 300. Clearly, a burp or belch is a form of regurgitation in which air or other gas that has entered the stomach through the mouth is expelled from the stomach back into and through the mouth. As Nealy, a licensed conductor of the breath test, told Pearson after he indicated he had burped, the gas regurgitated from the stomach by burping "could affect [the] results [of the breath test] and create an invalid sample." Thus, it is apparent from his testimony that Nealy understood through his training that a breath test could be properly administered only if the testee had not burped or belched during the twenty-minute period immediately before a breath sample is given. Indeed, Nealy explained at trial that, although he had not seen or heard Pearson burp during the observation period, he was required, before obtaining a breath sample from him, to ask whether he had burped. He additionally admonished Pearson, upon starting the second and third observation periods, to immediately inform him if he burped again so that he could restart the required observation period without delay.

In Schmerber v. California, 384 U.S. 757, 770 (1966), the Supreme Court noted that "the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system." See also Davis v. Commonwealth, 8 Va. App. 291, 296, 381 S.E.2d 11, 14 (1989) (observing that "blood alcohol concentration, as measured by a chemical test, is a function of many factors including . . . the length of time between drinking and measurement"). Hence, there was a need for prompt testing in this case because the percentage of alcohol in Pearson's blood was diminishing after Sergeant Nealy observed Pearson driving at approximately 8:07 p.m. See id. at 300, 381 S.E.2d at 16 (noting that, because the blood alcohol

measurement obtained from a prescribed chemical test is presumed to accurately reflect the accused's blood alcohol concentration at the time of the alleged offense, the "blood alcohol absorption and elimination rates makes it clear the timing of the chemical test is critical in terms of the accuracy of the test to reflect the prior blood alcohol concentration at the time of driving"); see also Romo v. Anchorage, 697 P.2d 1065, 1071 (Alaska Ct. App. 1985) (recognizing the need for prompt administration of the breath test in order "to preserve accurate evidence" of intoxication, because the alcohol concentration in an arrestee's blood dissipates with the passage of time).

When approached by Nealy, Pearson admitted that he had consumed three beers over the past two hours at a restaurant. He also told Nealy that he had eaten some chili earlier in the day at a different restaurant and that the chili had given him indigestion. After arresting Pearson for driving under the influence of alcohol, Nealy transported him to the jail for administration of a breath test. At the jail, Nealy began the requisite twenty-minute observation period at 9:02 p.m. At 9:36 p.m., Nealy asked Pearson if he had burped or belched, and Pearson told him that he had. It is unknown from the evidence, whether Pearson burped several times during that period or only once. Nealy then began a new twenty-minute observation period. At 9:37 p.m., Pearson indicated that he had burped again. Nealy began another twenty-minute observation period. At 9:38 p.m., Pearson informed Nealy that he had burped again and told the officer that he was "having a tough time" with the chili he had eaten earlier.

In light of the fact that Pearson was repeatedly burping because of chili he had consumed at least three and a half hours earlier, we find it was reasonable for Nealy to conclude that Pearson's digestive problem would not end in time to obtain a valid breath sample and accurate test result before the blood alcohol evidence diminished. We conclude, therefore, that Nealy acted properly in

determining that Pearson was "physically unable to submit to the breath test," within the meaning of Code § 18.2-268.2(B), and in taking him to the hospital for a blood test.[1]

Pearson argues the Commonwealth must show that he was "passed out or severely injured" to prove he was "physically unable to submit to the breath test." He cites no authority for this argument, and we know of no authority that limits such proof to these two circumstances. Here, although not "passed out or severely injured," Pearson's physical condition precluded him from submitting a valid, untainted breath sample for analysis.

For these reasons, we hold the trial court did not abuse its discretion in admitting the certificate of blood analysis into evidence. Accordingly, we affirm Pearson's conviction.

<u>Affirmed.</u>

---

[1] Our holding—that Sergeant Nealy substantially complied with Code § 18.2-268.2(B) because Pearson's repeated burping met the statute's "physical inability" requirement necessitating the use of a blood test—is limited to the circumstances and legal context of this case. In other words, our disposition of this case is not a holding that, as a matter of law, the act of burping, be it observed, admitted, or subsequently asserted, constitutes a condition that necessarily renders one "physically unable" to submit to a breath test in all cases.