COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Kelsey and Senior Judge Bumgardner
Argued at Chesapeake, Virginia


ARTHUR C. PARMANN

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0854-06-1                 JUDGE RUDOLPH BUMGARDNER
                                                         MARCH 13, 2007
COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF GLOUCESTER COUNTY
                              William H. Shaw, III, Judge

              G. Paul Martin for appellant.

              Alice T. Armstrong, Assistant Attorney General II (Robert F.
              McDonnell, Attorney General, on brief), for appellee.


        Arthur C. Parmann appeals his conviction by a jury of driving under the influence.  He

maintains the officer who administered the breath test testified as a toxicologist.  We conclude

the witness testified within the scope of his training and expertise as an operator of the testing

equipment, not as a toxicologist, and affirm.

        A deputy sheriff stopped the defendant for erratic driving.  The defendant had a strong

odor of alcohol, his eyes were glassy, and his speech was slurred.  After he failed field sobriety

tests, the deputy sheriff arrested him for driving under the influence and took him to the sheriff's

department for a breath test.  The test showed the defendant's blood alcohol content was .12.

        At trial, the defendant testified that he had placed an alcohol swab between his dental

bridge and his gums to treat a cut.  He argued the alcohol swab caused the breath test to show

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

that he had consumed alcohol when he had not. He denied drinking any alcohol or having told the arresting officer that he had.

Lt. Hawkins administered the breath test. He was a trained and certified operator of the Intoxilyzer 5000. He testified about his training and certification on the Intoxilyzer 5000 and about administering the breath test to the defendant. Lt. Hawkins testified that prior to administering the test, he looked into the defendant's mouth and did not see any foreign objects, but he conceded he did not look under the defendant's tongue or lips. The defendant did not tell Lt. Hawkins that he had anything in his mouth. The officer observed the defendant for twenty minutes before taking the breath sample.

Lt. Hawkins testified that a twenty-minute observation period was sufficient time for any alcohol from an alcohol swab to dissipate. He testified that if the defendant had any isopropyl alcohol or mouthwash in his mouth at the time of the test, the Intoxilyzer 5000 would have indicated an invalid sample. Lt. Hawkins also testified that a respiratory illness or disease would not affect the test results. The defendant objected to that testimony.

The defendant argues Lt. Hawkins was not qualified as a toxicologist and his knowledge was limited to the operation of the Intoxilyzer 5000. Because he was not a toxicologist, he was not qualified to give an opinion on the time necessary for alcohol to dissipate from an alcohol swab in a person's mouth, nor was he qualified to state whether a respiratory illness would affect the test.

Code § 18.2-268.9 provides that the chemical analysis of a person's breath must be performed in accordance with methods approved by the Department of Criminal Justice Services, Division of Forensic Science. The Commonwealth must prove the test was conducted in accordance with those methods. Pearson v. Commonwealth, 43 Va. App. 317, 324, 597 S.E.2d 269, 272 (2004); Rollins v. Commonwealth, 37 Va. App. 73, 82, 554 S.E.2d 99, 104

(2001). Those methods are set forth in 6 VAC 40-20-110. The regulation establishes a twenty-minute observation period before the test. As stated in Pearson:

> Plainly, the purpose of this regulation is to assure the testee has not engaged, either voluntarily or involuntarily, in activities before a breath test that could taint or otherwise affect the testee's breath sample. In other words, the regulation is intended to assure the accuracy of the test result, an objective as important to the accused as to the Commonwealth.

Pearson, 43 Va. App. at 324, 597 S.E.2d at 272.

Lt. Hawkins, as a trained and certified operator of the Intoxilyzer 5000, explained how the Intoxilyzer 5000 worked. He testified that the observation period was sufficiently long that any alcohol present in the mouth would not affect the results of the test. He stated the presence of alcohol in the mouth at the time the sample was taken would yield a reading of "invalid sample" and a respiratory disorder or disease would not affect the results of the test.

All of the statements fell within Lt. Hawkins's area of acknowledged expertise in the operation of the Intoxilyzer 5000. The required training for an operator of the Intoxilyzer 5000 covered the effects of residual mouth alcohol and the steps to keep it from corrupting a test. The testimony that twenty minutes was sufficient time for any alcohol from an alcohol swab to dissipate was part of the training and within the range of expertise acquired for certification. A certified operator is trained that if any isopropyl alcohol or mouthwash is in the subject's mouth at the time of the test, the machine returns an "invalid sample" result. Similarly, an operator is trained to know whether a respiratory disease or illness could affect the test.

The Commonwealth had to prove the officer administered the test in compliance with the regulations establishing the methods for the test. Those are the very things about which Lt. Hawkins testified. His testimony also addressed the defense that the defendant's use of an alcohol swab could have affected the results of his breath test. Lt. Hawkins did not have to be a toxicologist to explain how different factors, such as an alcohol swab, might have affected the

validity of the results of the Intoxilyzer 5000.  The defendant concedes that the officer was an expert in the operation of the Intoxilyzer 5000, and we hold the testimony was within the range of his training and expertise in the use and operation of that device.

"It is well established that the admissibility of expert testimony is within the sound discretion of the trial court, and that court's decision will not be disturbed absent an abuse of discretion."  Patterson v. Commonwealth, 3 Va. App. 1, 11, 348 S.E.2d 285, 291 (1986).  The trial court did not abuse its discretion by admitting the testimony.  Accordingly, we affirm the decision of the trial court.

Affirmed.