COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Powell and Senior Judge Clements
Argued at Richmond, Virginia


DANTA ROBERTS, S/K/A
  DANTA OMAR ROBERTS

                                            MEMORANDUM OPINION* BY
v.        Record No. 1830-07-2           JUDGE JEAN HARRISON CLEMENTS
                                                FEBRUARY 10, 2009

COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                          Beverly W. Snukals, Judge

          Jessica M. Bulos, Assistant Appellate Defender (Office of the Public
          Defender; Office of the Appellate Defender, on briefs), for appellant.

          Virginia B. Theisen, Senior Assistant Attorney General (Robert F.
          McDonnell, Attorney General, on brief), for appellee.


          Danta Roberts (appellant) was convicted in a bench trial of possession of cocaine with the

intent to distribute in a school zone, in violation of Code § 18.2-255.2, and possession of cocaine

with the intent to distribute, in violation of Code § 18.2-248.  On appeal, appellant contends the

trial court erred in denying his motion to suppress the cocaine found on his person in violation of

the Fourth Amendment.  Finding no error, we affirm the trial court's judgment and appellant's

convictions.

          As the parties are fully conversant with the record in this case, and because this

memorandum opinion carries no precedential value, this opinion recites only those facts and

incidents of the proceedings as are necessary to the parties' understanding of the disposition of

this appeal.

_____

          * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND

"In accordance with familiar principles of appellate review, we 'state the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party below.'" Pearson v. Commonwealth, 43 Va. App. 317, 319, 597 S.E.2d 269, 270 (2004) (quoting Johnson v. Commonwealth, 259 Va. 654, 662, 529 S.E.2d 769, 773 (2000)).  So viewed, the evidence established that on October 19, 2006, Charles Rose, a city property maintenance inspector, was inspecting a property near Broad Rock Boulevard in the City of Richmond with Police Officer Mark Wiggins.  Interrupting the inspection, Wiggins and Rose departed in Wiggins' vehicle from the property in response to a radio call regarding "a situation" at the Rock Creek Apartments.  Wiggins told Rose the radio call described a shirtless, armed individual who was running across Broad Rock Boulevard.

As they approached the Rock Creek Apartments, they saw an individual, later identified as appellant, run from the apartment complex to a gas station across Broad Rock Boulevard.  Then, they saw appellant run back from the gas station, cross the same street, and run behind the apartment complex.  During their observation of appellant's conduct, the radio reports pertaining to the situation were continually updated.  One update described the situation as a domestic assault.  Another update described the same situation as a robbery by an armed, thin-built, black male wearing jeans, tennis shoes, and no shirt, a physical description matching appellant's as Wiggins and Rose contemporaneously observed him crossing the street.

Arriving on the scene, Wiggins and Rose drove to the back of the apartment complex and exited Wiggins' vehicle.  As Wiggins stood near the exit door of the apartment complex, appellant immediately "popped out."  Appellant was shirtless, in a hurry, appeared as if he had been running, was sweating, and had some cuts on his face and head.  Wiggins immediately

commanded appellant "to get on the ground." Wiggins stopped appellant approximately 823 feet from Broad Rock Elementary School.

Responding to the same radio reports, Police Officer J.B. Like arrived on the scene. After Wiggins commanded appellant to get on the ground, Like placed appellant in handcuffs and patted him down for weapons. Following a brief interview with the victim of the robbery and domestic assault, Like arrested appellant at the scene. During a search incident to arrest, Like recovered jewelry, $506, and a plastic bag containing 33 grams of cocaine.

Subsequently, appellant was indicted for possession of cocaine with the intent to distribute in a school zone, in violation of Code § 18.2-255.2, and possession of cocaine with the intent to distribute, in violation of Code § 18.2-248. Appellant moved to suppress the cocaine found on his person, claiming he was detained by Wiggins without reasonable articulable suspicion. Specifically, appellant contended the anonymous tips conveyed through the police radio lacked reliability and that the police should have conducted more investigation as to the source of the tip before detaining appellant.

Following a hearing, the trial court denied appellant's motion to suppress. In reaching that decision, the trial court described the anonymous tips transmitted through the police radio as an "ongoing process." In addition, the trial court set forth its rationale as follows:

> It's not like they got one call matching the description and then they go out and find somebody matching the description. It's all happening before their eyes. The calls are coming in. They're hearing three or four times over the radio a progression of incidents that corroborated as they are approaching the scene.

Appellant was convicted as charged, and this appeal followed.

## II. ANALYSIS

On appeal, appellant contends the trial court erred in denying his motion to suppress. To support that contention, he claims he was unlawfully detained based on an anonymous tip

- 3 -

without sufficient corroboration of its reliability, in violation of the Fourth Amendment. In response, the Commonwealth contends the continuing tips reported through the police radio to Wiggins, combined with Wiggins' own observations, provided reasonable articulable suspicion for the investigative detention. We agree with the Commonwealth.

"In reviewing a trial court's denial of a motion to suppress, 'the burden is upon [the appellant] to show that th[e] ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'" McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (en banc) (quoting Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)). While "we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers," id. at 198, 487 S.E.2d at 261 (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)), "we review *de novo* the trial court's application of legal standards such as reasonable suspicion to the particular facts of the case," McCracken v. Commonwealth, 39 Va. App. 254, 258, 572 S.E.2d 493, 495 (2002) (en banc).

If police possess a reasonable articulable suspicion that a person is, has, or is about to engage in criminal activity and may be armed and dangerous, the person may be detained for a brief investigation and patted down for weapons without violating his or her Fourth Amendment protection against unreasonable searches and seizures. El-Amin v. Commonwealth, 269 Va. 15, 20, 607 S.E.2d 115, 117 (2005) (citing Adams v. Williams, 407 U.S. 143, 146 (1972); Terry v. Ohio, 392 U.S. 1, 24 (1968)). The investigatory stop, however, "must be based on something more than the officer's 'inchoate and unparticularized suspicion or "hunch."'" Ramey v. Commonwealth, 35 Va. App. 624, 629, 547 S.E.2d 519, 522 (2001) (quoting Terry, 392 U.S. at 27).

Whether an officer has reasonable suspicion to conduct an investigatory stop is based on an assessment of the totality of the circumstances, which includes "'the content of information possessed by police and its degree of reliability.'" Harris v. Commonwealth, 276 Va. 689, 695, 668 S.E.2d 141, 145 (2008) (quoting Jackson v. Commonwealth, 267 Va. 666, 673, 594 S.E.2d 595, 599 (2004)). "[W]here an informant's tip supplies part of the basis for reasonable suspicion, we must ensure that the tip possesses sufficient indicia of reliability." United States v. Perkins, 363 F.3d 317, 323 (4th Cir. 2004) (citing Florida v. J. L., 529 U.S. 266, 270 (2000); Alabama v. White, 496 U.S. 325, 326-27 (1990); Adams, 407 U.S. at 147).

"The indicia of reliability of an anonymous tip may be bolstered when the tipster provides predictive information [related to the alleged criminal activity], which the police can use to test the tipster's basis of knowledge and credibility." Harris, 276 Va. at 695-96, 668 S.E.2d at 145. Confirmation of predictive information, however, is not the only way to assess the reliability of an anonymous tip. Perkins, 363 F.3d at 325-26. Indeed, an anonymous tip may be evaluated and deemed sufficiently reliable where the tipster reports readily observable criminal actions corroborated by an officer's independent observations. Harris, 276 Va. at 696, 668 S.E.2d at 146; see also Jackson, 267 Va. at 680, 594 S.E.2d at 603 (finding that an investigative stop violated the Fourth Amendment because the tip lacked indicia of reliability and the officer's observations did not reveal any suspicious behavior); United States v. Wheat, 278 F.3d 722, 734 (8th Cir. 2001) (noting that "the predictive aspects of an anonymous tip may be less applicable to tips purporting to describe contemporaneous, readily observable criminal actions, as in the case of erratic driving witnessed by another motorist").

Applying these principles to the facts of this case, we conclude the anonymous tips, as corroborated by Wiggins' independent observations, contained sufficient indicia of reliability. In response to an initial radio report describing "a shirtless, armed individual" who was running

across Broad Rock Boulevard, Wiggins and Rose approached the scene to investigate the situation. As Wiggins and Rose traveled to the scene, they saw appellant run from an apartment complex to a gas station across Broad Rock Boulevard. Then, they saw appellant run back from the gas station, cross the same street, and run behind the apartment complex. During their observation of appellant's conduct, the radio reports described the situation as a violent domestic assault. Another radio report described the situation as a robbery by an armed individual who matched appellant's physical characteristics as Wiggins and Rose contemporaneously observed appellant crossing the street. Having arrived on the scene, Wiggins and Rose saw appellant exit the back of the apartment complex. There, they additionally observed that appellant had been running, sweating, and had cuts on his face and head.

Under these circumstances, we agree with the trial court that the anonymous tips described a "progression of incidents" that were corroborated by Wiggins as he approached the scene. Wiggins observed that appellant matched the physical description of the suspect exactly as the suspect was described over the radio. Wiggins also observed appellant's suspicious conduct that precisely matched the suspect's conduct as transmitted over the radio. Considering Wiggins' additional observations of appellant upon his exit from the apartment complex, Wiggins could reasonably determine that appellant was recently involved in a domestic assault and a robbery. Accordingly, we conclude the anonymous tips, together with Wiggins' own observations, provided reasonable articulable suspicion for the investigative detention.

## III. CONCLUSION

For these reasons, we affirm the trial court's judgment and appellant's convictions.

Affirmed.