UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:    Judges Beales, Alston and Senior Judge Frank
Argued by teleconference

JAHSAAD KYWAN LIVINGSTON

v.        Record No. 0888-17-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE ROBERT P. FRANK
JUNE 5, 2018

FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Christopher W. Hutton, Judge

Stephen K. Smith for appellant.

Rachel L. Yates, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

Jahsaad Kywan Livingston, appellant, was convicted, in a bench trial, of abduction for

pecuniary gain, conspiracy to commit abduction, and use of a firearm in the commission of

abduction.  On appeal, appellant asserts that the trial court erred in denying his motion to strike

the evidence.  We affirm the convictions.

BACKGROUND[1]

Appellant was tried jointly with his co-defendant, Therin Mason Miller-Jones (Therin).

For several months in 2015, Therin had supplied drugs to Darren Walling, a veteran who

suffered from post-traumatic stress disorder and was addicted to crack cocaine.  By December

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] "In accordance with familiar principles of appellate review, we 'state the evidence
presented at trial in the light most favorable to the Commonwealth, the prevailing party below.'"
Pearson v. Commonwealth, 43 Va. App. 317, 319, 597 S.E.2d 269, 270 (2004) (quoting Johnson
v. Commonwealth, 259 Va. 564, 662, 529 S.E.2d 769, 773 (2000)).

25, 2015, Walling owed Therin about $3,600 for the cocaine that he had received, and Therin demanded payment for the debt. Therin and a third party then assaulted Walling.

While he recovered from his injuries, Walling stayed with his parents at their home in Hampton. Between December 25, 2015 and January 15, 2016, Walling's father (Richard) saw Therin's vehicle, a Dodge Avenger, drive by his house about ten times, but he could not see who was driving the vehicle. Richard testified that Therin had come to his house looking for Walling about thirty times between October and December 2015.

In the early morning hours of January 15, 2016, Therin came to Walling's residence with appellant "to discuss and finish off the debt" for the drugs. Out of fear for his family, Walling went outside to speak with Therin and stood by the driver's side of the Avenger. Walling testified that the encounter "got a bit grim." Walling attempted to negotiate the debt, offering to pay more money than he owed, but Therin told him that "your money isn't good. I'm going to have to take your blood." Appellant walked to Walling's left side and said, "Let's just smoke him now. We have enough room in the trunk. Let's just do it now." Therin instructed appellant to drive the Avenger to a nearby Sunoco gas station and told Walling to "come walk" with him. Therin lifted his shirt with both hands to reveal a handgun in his waistband. When Walling said that he would rather go inside his residence than take a walk, Therin said, "You don't need to go there. Come on. You're not going there . . . we're taking a walk." Richard became concerned and went outside. Upon observing the confrontation, Richard threatened to call the police as Therin and Walling continued to walk away. Walling was afraid that he would be shot if he resisted and that his family also would be harmed.

Therin and Walling walked to the Sunoco station. Therin was surprised to find that appellant had gone to a 7-Eleven near the Sunoco instead of waiting at the station. Therin and Walling then walked to the 7-Eleven. Therin went into the store but left Walling standing alone

outside the store, directly in front of the Avenger where appellant was sitting in the passenger seat. Therin told Walling not to go anywhere. Walling testified he was scared to leave because he feared Therin and appellant could have caught him and shot him.

Richard called the police. Officer Andrew Kasecamp arrived at the 7-Eleven and arrested Therin when he exited the store.[2] Kasecamp retrieved an operable, loaded .44 magnum revolver from Therin's left pants pocket. The officer testified that he did not see anyone in the Avenger when he first approached the 7-Eleven but subsequently observed appellant inside the vehicle.

After the police apprehended appellant, he waived his rights[3] and agreed to speak with Detective Jacob Marmet. Appellant said that Therin had seemed agitated that day. Therin said that he wanted to take care of something and drove with appellant to a house on Shelton Road in Hampton. Therin exited the car and spoke with someone. Therin remained at the house but told appellant to drive to 7-Eleven. Appellant said that he fell asleep in the car while waiting in the parking lot for Therin.[4]

Appellant testified at trial that he went with Therin to Walling's house to get high, although he also said that he did not like being around Walling because Walling would "act funny and irrational" when he got high and had tried to fight appellant on previous occasions. Appellant said that Therin was "distraught" as they drove to Walling's home because appellant and Therin had argued about appellant's not wanting to be around Walling. According to

_____

[2] The police had an outstanding warrant for Therin pursuant to the December 2015 assault on Walling.

[3] See Miranda v. Arizona, 384 U.S. 436 (1966).

[4] No other evidence corroborated appellant's claim that he had been sleeping in the car. Officer Kasecamp testified only that he saw appellant in the car. Walling testified that he did not know whether appellant was watching him from the car or sleeping, but he also said he was afraid to leave the store because appellant or Therin could catch him and shoot him. The trial court could reasonably infer that Therin would not have left Walling standing alone outside the store directly in front of the car in which appellant was sitting if appellant had been asleep.

appellant, Therin then told him that he had "to take care of something." Appellant denied knowing that Walling owed money to Therin or conspiring with Therin to collect the debt. Appellant said that he did not threaten Walling or prevent him from leaving the 7-Eleven.

The trial court denied appellant's motion to strike, specifically finding that Walling's testimony was more credible than appellant's or Therin's testimony.[5]

This appeal follows.

ANALYSIS

Appellant argues that the evidence was insufficient to support his convictions, but his entire argument in his brief is predicated on viewing the evidence in the light most favorable to him. However, that is not the proper standard of review, particularly given that the trial court rejected appellant's testimony as not credible.

"When reviewing a defendant's challenge to the sufficiency of the evidence to sustain a conviction, this Court reviews the evidence in the light most favorable to the Commonwealth, as the prevailing party at trial, and considers all inferences fairly deducible from that evidence." Allen v. Commonwealth, 287 Va. 68, 72, 752 S.E.2d 856, 858-59 (2014). The Court "is not limited to the evidence mentioned by a party in trial argument or by the trial court in its ruling," but "must consider all the evidence admitted at trial that is contained in the record." Perry v. Commonwealth, 280 Va. 572, 580, 701 S.E.2d 431, 436 (2010) (quoting Bolden v. Commonwealth, 275 Va. 144, 147, 654 S.E.2d 584, 586 (2008)).

The law is well established that

> [a]n appellate court may reverse the judgment of the trial court "if the judgment 'is plainly wrong or without evidence to support it.'" Crawford v. Commonwealth, 281 Va. 84, 112, 704 S.E.2d 107,

---

[5] Therin testified that Walling did not owe him "thousands of dollars" and that he had gone to meet Walling on January 15 because Walling had told him that he had some money to "get high." Therin said he and Walling smoked crack together in Walling's yard and that Walling went with him to 7-Eleven because Walling thought that Therin had more cocaine.

123 (2011) (quoting Code § 8.01-680). "If there is evidence to support the convictions, the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial." Id. (quoting Commonwealth v. Jenkins, 255 Va. 516, 520, 499 S.E.2d 263, 265 (1998)). The issue on appeal is whether the record contains evidence from which "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." McMillan v. Commonwealth, 277 Va. 11, 19, 671 S.E.2d 396, 399 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

Ragland v. Commonwealth, 67 Va. App. 519, 530, 797 S.E.2d 437, 442 (2017).

The trial court, as the fact finder, "has the opportunity to see and hear the witnesses, [and] has the sole responsibility to determine their credibility, the weight to be given their testimony, and the inferences to be drawn from proven facts." Taylor v. Commonwealth, 256 Va. 514, 518, 506 S.E.2d 312, 314 (1998); accord Hamilton v. Commonwealth, 279 Va. 94, 105, 688 S.E.2d 168, 175 (2010). Further, the trial court can infer that a defendant lied to conceal his guilt if the court concludes that the testimony was untruthful. See Flanagan v. Commonwealth, 58 Va. App. 681, 702, 714 S.E.2d 212, 222 (2011); Sam v. Commonwealth, 13 Va. App. 312, 320, 411 S.E.2d 832, 837 (1991). On appeal, we defer to the credibility determinations made by the fact finder, who has seen and heard the witnesses testify, unless the witnesses' testimony is inherently incredible. See Sawyer v. Commonwealth, 43 Va. App. 42, 53, 596 S.E.2d 81, 86 (2004).

Appellant was convicted of abduction for pecuniary gain,[6] conspiracy to commit abduction, and use of a firearm in the commission of abduction. Code § 18.2-47(A) provides

---

[6] At trial, appellant argued that the evidence did not prove that Walling was abducted for pecuniary gain, but he has abandoned that argument on appeal and thus it is waived. See Rule 5A:20(e) (requiring the opening brief of appellant to contain "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error"); Farmer v. Commonwealth, 62 Va. App. 285, 295-96, 746 S.E.2d 504, 509 (2013) (holding that defendant abandoned an argument that was not raised in his opening brief on appeal); Atkins v. Commonwealth, 57 Va. App. 2, 20, 698 S.E.2d 249, 258 (2010) (holding that defendant's argument was waived under Rule 5A:20(e) because he "provide[d] no legal argument or authority in his brief to support his argument").

that a person is guilty of abduction if he "by force, intimidation or deception, and without legal justification or excuse, seizes, takes, transports, detains or secretes another person with the intent to deprive such other person of his personal liberty or to withhold or conceal him from any person, authority or institution lawfully entitled to his charge." Code § 18.2-48 requires the specific intent to abduct for pecuniary gain, rather than to deprive a person of his personal liberty.

Appellant does not dispute that Walling was abducted for pecuniary gain, nor does he challenge Therin's involvement in the crime. Rather, appellant asserts that he was not involved in the offense. The evidence, viewed under the applicable standard, however, sufficiently established that appellant was guilty of abduction for pecuniary gain. Appellant and Therin drove together to Walling's house. Appellant told the police that Therin had seemed agitated and said that he wanted to take care of something. Appellant testified that he thought they were going to Walling's residence to "get high," but he also said that he did not like to be around Walling when Walling was using drugs. The trial court reasonably could infer that "get[ting] high" was not appellant's motive for accompanying Therin.

Appellant denied knowing that Walling owed Therin money, but appellant was present when Therin confronted Walling about his outstanding drug debt. After Therin told Walling that his money was not "good" and that Therin was "going to have to take [his] blood," appellant approached Walling and said, "Let's smoke him now. We have enough room in the trunk. Let's do it right now." Appellant's threat to "smoke" Walling, coupled with Therin's threat and display of a handgun in his waistband, were intended to collect the debt by intimidating Walling. The requisite element under Code § 18.2-48 is the intent to extort money or obtain a pecuniary benefit, but "[i]t is not necessary that the criminal actually succeed in realizing his desired gain." Barnes v. Commonwealth, 234 Va. 130, 137, 360 S.E.2d 196, 201 (1987).

- 6 -

At Therin's direction, appellant drove Therin's vehicle from Walling's residence to a nearby location where he waited for Therin and Walling. Fearing for his own safety, as well as his family's, Walling believed he had no choice but to walk away from his house with Therin. After they arrived at the 7-Eleven, Therin went inside the store, leaving Walling standing outside directly in front of the Avenger in which appellant was sitting. It is reasonable to conclude that Therin would not have left Walling unattended unless appellant was there to ensure Walling's continued detention. Walling testified that he felt helpless because he was afraid he would be shot if he tried to run away. In an unbroken series of events, appellant and Therin threatened Walling, forced him to leave his home, and continued to detain him. We hold that the evidence was sufficient to prove that appellant was guilty of abduction for pecuniary gain.

The same facts support appellant's conviction for conspiracy to abduct Walling for pecuniary gain. Conspiracy is "an agreement between two or more persons by some concerted action to commit an offense." Ramsey v. Commonwealth, 2 Va. App. 265, 270-71, 343 S.E.2d 465, 469 (1986) (quoting Falden v. Commonwealth, 167 Va. 542, 544, 189 S.E. 326, 327 (1937)). Concert of action is an "action that has been planned, arranged, adjusted, agreed on, and settled between the parties acting together pursuant to some design or scheme." See Berkeley v. Commonwealth, 19 Va. App. 279, 283, 451 S.E.2d 41, 43 (1994) (quoting Rollston v. Commonwealth, 11 Va. App. 535, 542, 399 S.E.2d 823, 827 (1991)). The clandestine nature of a conspiracy does not require an "explicit agreement," and often an agreement "may only be established by circumstantial and indirect evidence including the overt actions of the parties." Jones v. Commonwealth, 279 Va. 295, 301, 687 S.E.2d 738, 741 (2010); accord Johnson v. Commonwealth, 58 Va. App. 625, 636, 712 S.E.2d 751, 756-57 (2011). When "it has been shown that the defendants 'by their acts pursued the same object, one performing one part and the others performing another part so as to complete it or with a view to its attainment, the [fact

finder] will be justified in concluding that they were engaged in a conspiracy to effect that object.'" Charity v. Commonwealth, 49 Va. App. 581, 586, 643 S.E.2d 503, 505 (2007) (quoting Brown v. Commonwealth, 10 Va. App. 73, 78, 390 S.E.2d 386, 388 (1990)).

The fact finder properly could conclude from the evidence in this case that appellant and Therin had agreed, in advance, to go together to Walling's house to collect the debt that Walling owed to Therin. To accomplish this mutual goal, both appellant and Therin threatened Walling. Appellant then waited at another location while Therin forced Walling to walk away from the safety of his own house and from his father's observation. After Therin and Walling arrived at the 7-Eleven, appellant kept watch over Walling to prevent him from escaping. Thus, each member of the conspiracy performed his part so as to obtain their goal. See id. We hold that the evidence sufficiently proved appellant was guilty of conspiracy to abduct for pecuniary gain.

As part of their joint criminal enterprise, Therin displayed a handgun before ordering Walling to walk away from his house. Even though appellant did not display a weapon, all participants may be held accountable for incidental crimes committed by another participant during the enterprise even though those crimes were not originally or specifically designed. See Berkeley, 19 Va. App. at 283, 451 S.E.2d at 43. Finding that the weapon was displayed as part of the conspiracy and ensuing abduction, we conclude that the trial court did not err in convicting appellant of use of a firearm in the commission of abduction. Appellant did not need to have actual possession of the gun as long as he acted in concert with Therin, who displayed the weapon. See Cortner v. Commonwealth, 222 Va. 557, 563, 281 S.E.2d 908, 911 (1981) (holding that although the defendant never actually possessed the gun used in the robberies, he acted in concert with the co-defendant who did display the weapon).

We thus affirm the convictions for the three felonies before this Court.

Affirmed.